■ The People of the State of New York, Respondent, v Phillip White, Appellant. [606 NYS2d 172] —Order, Supreme Court, Bronx County (Lawrence H. Bernstein, J.), entered September 11, 1992, which denied without a hearing defendant's motion pursuant to CPL 440.10 to vacate a judgment of that court and Justice rendered March 14, 1986, convicting him, after jury trial, of two counts of murder in the second degree, and sentencing him to two consecutive indeterminate terms of imprisonment of from fifteen years to life, unanimously reversed, on the law, defendant's motion is granted, and the matter is remanded for a new trial preceded by a *Wade* hearing.

In 1986 the defendant was convicted, after a jury trial, of two counts of murder in the second degree arising from the shooting deaths of Jimmy Clark on July 31, 1984 and Kevin Tabon on August 1, 1984. Defendant's conviction was affirmed by this Court without opinion *(People v White,* 131 AD2d 983, *lv denied* 70 NY2d 878). While serving his sentence, the defendant made Freedom of Information Law requests (Public Officers Law §§ 84-90) to the Police Department and the Bronx County District Attorney's Office, in response to which he received from the Police Department a Complaint Follow-up Report, known as a DD-5, which summarized an interview with Kevin Eybergen, a principal prosecution witness against him at trial. The DD-5, which had been omitted from the *Rosario* material provided to the defendant at trial, contained material significantly inconsistent with Eybergen's trial testimony. That document also contradicted representations made by the People in successfully opposing the defendant's motion for a *Wade* hearing prior to trial.

As here pertinent, the DD-5 reported Eybergen stating to a detective shortly after the incident that the person who shot Clark was unknown to him, and that he could not identify the shooter. At trial, Eybergen testified to knowing the defendant vaguely and seeing him chasing Clark down the street while firing a weapon at him. The defendant was linked to the second murder, of Mr. Tabon, in significant part through ballistics evidence that the gun used to kill Tabon was the same weapon used to kill Clark. Prior to trial, based upon the People's representation that the defendant was known to Eybergen, the defendant's motion for a *Wade* hearing, seeking to suppress Eybergen's identification testimony as the unduly suggestive result of exposure to a photo array, was denied under the authority of *People v Gissendanner* (48 NY2d 543).

In 1992, after discovery of the previously undisclosed DD-5, the defendant brought a CPL 440.10 motion to vacate his conviction, alleging *Rosario* and *Brady* violations based upon the People's failure to turn over the DD-5 to the defense and, additionally, arguing that he should be granted an identification hearing. The trial court denied the motion. We concur with the defendant in both respects, and grant the motion.

The defendant was clearly entitled to discovery of the DD-5 reporting the prior statements of witness Eybergen *(People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866; CPL 240.45 [1] [a]). In order to succeed on a motion to vacate a conviction pursuant to CPL 440.10 (1) (f) after direct appeal has been exhausted, a defendant "must demonstrate a reasonable possi-

bility that the failure to disclose the *Rosario* material contributed to the verdict" *(People v Jackson,* 78 NY2d 638, 649). We view the contradiction between the witness's testimony at trial and his prior statement to the detective, which the DD-5 in question documents but which was unknown to defense counsel at trial, as significant enough that there was a reasonable possibility that ignorance of it contributed to the verdict.

Insofar as the previously undisclosed DD-5 represents material that the defendant was entitled to under *Brady v Maryland* (373 US 83), where, as here, a specific discovery request was made by the defendant, a motion to vacate judgment under CPL 440.10 (1) (f) is evaluated under the same " 'reasonable possibility' " standard applicable to *Rosario* violations *(People v Vilardi,* 76 NY2d 67, 77; *People v Jackson, supra,* at 649). Thus, the defendant is entitled to vacatur of his conviction of murdering Clark upon this ground as well, and he is further entitled to a *Wade* hearing upon remand *(see generally, People v Rodriguez,* 79 NY2d 445).

Since the defendant was tied to the Tabon murder only by an excited utterance of the victim and ballistics evidence that the gun used to murder Tabon was the same as that used to murder Clark, and we find a reasonable possibility that the failure to disclose the DD-5 contributed to defendant's conviction of the murder of Clark, defendant's conviction of murdering Tabon must be reversed also. Concur—Murphy, P. J., Carro, Ellerin and Nardelli, JJ.